**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **JESUS CORTEZ *et al.*,** | **Case No.: 11-CV-03199 YGR** |
| **Plaintiffs,** | **ORDER GRANTING MOTIONS TO DISMISS WITH PREJUDICE** |
| **vs.** | |
| **COUNTY OF ALAMEDA *et al.*,** | |
| **Defendants.** | |

Plaintiffs Jesus Cortez, Enrique Gonzalez, Alfredo Esquivez, Luis Perez, Abelino Espinoza, Manuel Dunenas, Eduardo Lascano, Ramon Perez, Jose Garcia, Socorro Zendejas, and Pablo Duenas ("Plaintiffs") bring this civil rights action against Defendants County of Alameda, Alameda County Sheriff's Department, Sheriff Gregory J. Ahern ("Ahern"), Dean N. Stavert ("Stavert"), Hal Bancroft ("Bancroft"), Mike Bush ("Bush"), John Kriege ("Kriege"), Gary Parham ("Parham"), and Dale Silva ("Silva ") for selective enforcement of a zoning ordinance regulating the keeping of animals.  In their Second Amended Complaint, Plaintiffs bring one claim for selective prosecution under the Equal Protection Clause of the Fourteenth Amendment.

The Defendants have filed Motions to Dismiss the Complaint on the grounds that (1) the facts alleged do not plausibly suggest that any plaintiff has been prosecuted selectively; (2) eight of the eleven plaintiffs alleging selective prosecution have not actually been prosecuted; (3) the County of Alameda cannot be liable because Plaintiffs have not alleged that they were subjected to selective prosecution as result of County policy or custom; and (4) as private citizens, Defendants Bancroft, Bush, Kriege, Parham, and Silva, do not act under color of state law.

1   Having carefully considered the papers submitted and the pleadings in this action, for the

2   reasons set forth below, the Court hereby **GRANTS** both Motions to Dismiss **WITH PREJUDICE**.[1]

3   ## I.     BACKGROUND

4   Plaintiffs are Hispanic homeowners who live in the Fairview Area of the Hayward Hills, in

5   unincorporated Alameda County, California.  Dkt. No. 43, Second Amended Complaint,[2] ("SAC") ¶¶

6   1-2.  When Plaintiffs moved into their homes in the early-1980's the Alameda County Ordinance

7   Code permitted Plaintiffs to keep horses, steers and/or cows on lots in excess of one-half acre with

8   5000 square feet of available space per animal.  *Id.* ¶ 2.  Plaintiffs relied upon the zoning ordinances

9   that were in effect at the time they purchased their homes because they had animals.  *Id.*  Plaintiffs do

10  not allege that they have any animals subject to the Ordinance, the type or number of such animals.

11  On January 11, 2011, the County changed the zoning ordinance so that horses, steers, and/or cows

12  could only be kept on lots larger than 40,000 square feet with 20,000 square feet of available space

13  per animal.  *Id.* ¶¶ 4, 25.  Specifically, it provides:

14      17.26.030 – Uses permitted.

15      The following uses in addition to those permitted in the district with which it is
        combined are accessory uses permitted in an L district on a site of forty thousand
16      (40,000) square feet minimum size:

17          A.    Fifty (50) fowl (chicken, duck, goose, turkey) or rabbits, guinea pigs, or other
                  similar small animals);

18          B.    Two sheep, or two goats or other similar domestic animals or one cow, or one
                  horse, or other similar domestic animal or any combination thereof, for each
19                twenty thousand (20,000) square feet of lot area;

20          C.    Grazing or pasturing of horses for remuneration, on minimum area required by
                  subsection B of this section.

21  Homeowners may apply for a Conditional Use Permit in order to keep additional animals on their

22  property.[3]  SAC ¶ 4.  The application process for a Conditional Use Permit requires the applicant to

---

23  [1] Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds that this
24  motion is appropriate for decision without oral argument.

    [2] Although titled "First Amended Complaint," this is Plaintiffs' Second Amended Complaint.

25  [3] 17.26.040 – Conditional uses.
26      The following are conditional uses in an L district and shall be permitted only if
        approved by the board of zoning adjustments as provided in Section 17.54.130:
27          A.    The keeping of a number of animals in excess of that permitted by
                  Section 17.26.030;
28          B.    Kennel;
            C.    Boarding stables and riding academies;

pay the costs necessary to process the application, and also agree to hold the County harmless from any liability the County may incur as a result of the County's actions with respect to granting the application. *Id.*

"Plaintiffs allege that they are being singled out . . . for selective enforcement of the law and for selective prosecution." *Id.* ¶¶ 11, 30. Plaintiffs allege that the Defendants conspired to discriminate against and harass Plaintiffs, to interfere with Plaintiffs' personal and property rights, and to force Plaintiffs out of their homes in the Fairview Area. *See id.* ¶¶ 8, 9, 11, 18, 19, 27, 30. Specifically, Plaintiffs allege that Defendants Bancroft, Kriege, Parham, and Bush, who are Officers and Directors of the Hayward Hills Homeowners' Association (collectively "Homeowners' Association Defendants"), made frequent and unwarranted complaints to Defendants Alameda County, the Alameda County Sheriff's Department, Sheriff Ahern, and Stavert (collectively "County Defendants"), that Plaintiffs have violated the Ordinance. *Id.* ¶ 9. On March 6, 2011, in response to these complaints, and at the urging of the Homeowners' Association Defendants, Sheriff Ahern and Stavert "issued threatening demands for compliance" with the Ordinance and "specifically cited for prosecution, plaintiffs: Manuel Duenas, Luis Silva Perez, Brenda Estrada, the daughter of plaintiff Alfredo Esquivez, and Jose Guadalupe Garcia." *Id.* ¶¶ 10, 28.

On the basis of these allegations, eleven Plaintiffs, only three of whom have been prosecuted, bring one claim for Selective Enforcement. They allege that "notwithstanding the presence of claimed violations," no non-Hispanic homeowner has been cited or prosecuted for violating the Ordinance, yet Plaintiffs are being singled out for criminal prosecution when "no violations are known to exist, or there has been a failure of compliance." *Id.* ¶¶ 8, 10, 27, 28.[4] Plaintiffs allege that the Ordinance is being enforced "based on an unjustifiable standard such as minority status, race, religion or other arbitrary classification including sex, color religion, ancestry, national origin,

---

D.     Sale of any products of any permitted use, including a stand for the sale
       at retail of such items as regulated in Section 17.06.050D.

[4] "Plaintiffs are informed and believe and herein allege that the County and the County's Sheriff's Department including Ahem and Stavert have issued no threatening demands for compliance with the said Ordinance Code and the 'Standards For The Keeping of Animals in the Residential Zones of the Fairview Area of Alameda County' or specifically cited for prosecution a non-Hispanic homeowner or Homeowners' Association Defendants notwithstanding the presence of claimed violations." SAC ¶¶ 10, 28.

United States District Court
Northern District of California

1  disability and medical condition." *Id.* ¶¶ 8, 9, 11, 17, 27, 30.  The claim is brought pursuant to 42

2  U.S.C. § 1983, for selective prosecution in violation of the Equal Protection Clause of the Fourteenth

3  Amendment to the United States Constitution.

4  **II.      LEGAL STANDARD**

5          A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the

6  complaint.  *Ileto v. Glock. Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  Review is limited to the

7  contents of the complaint, and exhibits attached thereto.  *See Hal Roach Studios. Inc. v. Richard*

8  *Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989).  All allegations of material fact are

9  taken as true.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Although "detailed factual allegations"

10  are not required, Plaintiffs' obligation to provide the grounds of their entitlement to relief "requires

11  more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

12  not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations

13  omitted).[5]  In considering a motion to dismiss, the court can start by identifying the legally

14  conclusory statements; these are not entitled to the assumption of truth.  *See Ashcroft v. Iqbal*, 556

15  U.S. 662, 678-79 (2009).  Then the court should assume the veracity of the well-pleaded factual

16  allegations and "determine whether they plausibly give rise to an entitlement to relief."  *Id.* at 679.

17  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

18  misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to

19  relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 558-59).  Applying these principles to the SAC, the Court

20  concludes that this lawsuit must be dismissed with prejudice.

21  **III.     DISCUSSION**

22          The elements for a Section 1983 cause of action are that (1) persons acting under color of state

23  law (2) violated rights guaranteed by the Constitution.  *See Buckley v. City of Redding*, 66 F.3d 188,

24  190 (9th Cir. 1995).  The alleged right is the Fourteenth Amendment's equal protection clause based

25  upon a theory of selective prosecution.  To state an equal protection claim based upon a theory of

26  selective prosecution, Plaintiffs must allege that others similarly situated have not been prosecuted for

27

28  ───────────────
[5] Plaintiffs recite the first clause of this sentence multiple times in their opposition as a justification not to
provide factual allegations.  Alleging legal conclusions does not state an entitlement to relief.

4

the same conduct and that the prosecution is based on an impermissible motive.  *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995).

### A.   WHETHER THE ALLEGATIONS ARE SUFFICIENT TO SUPPORT A CLAIM FOR SELECTIVE PROSECUTION

"The first step in equal protection analysis is to identify the [County's] classification of groups . . ..  Once the plaintiff establishes governmental classification, it is necessary to identify a 'similarly situated' class against which the plaintiff's class can be compared."  *Id.* at 1187.  "A similarly situated offender is one outside the protected class who has committed roughly the same crime under roughly the same circumstances but against whom the law has not been enforced." *United States v. Lewis*, 517 F.3d 20, 27 (1st Cir. 2008) (citing *United States v. Armstrong*, 517 U.S. 456, 465 (1996)).  "The goal of identifying a similarly situated class . . . is to isolate the factor allegedly subject to impermissible discrimination.  The similarly situated group is the control group." *United States v. Aguilar*, 883 F.2d 662, 706 (9th Cir. 1989), *cert. denied*, 498 U.S. 1046 (1991).

#### 1.   Control Group

As best the Court can decipher, the control group is "non-Hispanic homeowners" who have not been prosecuted for violating the Ordinance "notwithstanding the presence of claimed violations."  However, Plaintiffs both allege that Plaintiffs are being prosecuted where "no violations are known to exist" and that they are being prosecuted where there "has been a failure of compliance."  SAC ¶ 27.

#### 2.   Similarly Situated

To the extent that Plaintiffs allege that they are being singled out for criminal prosecution for violating the Ordinance, Plaintiffs do not allege facts to show that Plaintiffs have violated the Ordinance in the same manner as non-Hispanic Homeowners against whom the Ordinance has not been enforced.  *United States v. Lewis*, 517 F.3d 20, 27 (1st Cir. 2008) ("A similarly situated offender is one outside the protected class who has committed roughly the same crime under roughly the same circumstances but against whom the law has not been enforced.") (citing *United States v. Armstrong*, 517 U.S. 456, 465 (1996)).  Plaintiffs only allege that there "has been a failure of compliance" on Plaintiffs' part and have asserted "claimed violations" by Non-Hispanic Homeowners.  To the extent Plaintiffs contend they are being prosecuted for *non-existent*

violations of the Ordinance, then the non-Hispanic Homeowners cannot be "similarly situated" to Plaintiffs because the non-Hispanic Homeowners allegedly *have* violated the Ordinance.

Without identifying how Plaintiffs have failed to comply with the Ordinance, or the "claimed violations" by Non-Hispanic Homeowners, it is pure speculation that the two groups are similar with respect to the violations committed. The Ordinance regulates the number of horses, cows, sheep, goats, fowl, rabbits and guinea pigs that a homeowner may keep on his or her land. Plaintiffs do not identify the type of animal or number of animals they keep on their properties or that the Non-Hispanic Homeowners keep on theirs.[6]

> 3.  *Same Circumstances*

Additionally, Plaintiffs fail to allege sufficient facts to support a finding of discriminatory enforcement because Plaintiffs do not allege that the County Defendants were aware that non-Hispanic Homeowners were violating the Ordinance. County Defs.' Mot. 6-7 (citing *LaTrieste Rest. v. Village of Port Chester*, 188 F.3d 65, 69 (2d Cir. 1999)). That unreported violations may go unabated does not plausibly suggest that the County Defendants are selectively enforcing the Ordinance. *See Rosenbaum v. City and County of San Francisco*, 484 F.3d 1142, 1155 (9th Cir. 2007) ("[T]he police may legitimately respond to citizen complaints."). Without alleging that the County Defendants knew that these non-Hispanic Homeowners were violating the Ordinance and notwithstanding this knowledge, they selected Plaintiffs for prosecution but not any non-Hispanic Homeowners, Plaintiffs do not state a claim for selective prosecution.

Based on the foregoing analysis, the Court **GRANTS** the Motions to Dismiss **WITHOUT LEAVE TO AMEND**.

---

[6] If, for example, one of the Plaintiffs has violated the statute by keeping ten horses on his property and a non-Hispanic homeowner has violated the Ordinance by keeping forty-five rabbits, there is no way to compare the enforcement of these different violations. The comparison really has to be apples to apples and oranges to oranges, or here, horses to horses and rabbits to rabbits.

**B.   RIPENESS - WHETHER THE CLAIMS FOR SELECTIVE PROSECUTION ARE "RIPE" AS TO THE EIGHT PLAINTIFFS WHO HAVE NOT BEEN PROSECUTED**

Eleven Plaintiffs[7] allege that they are being selectively prosecuted based on the prosecution of three of them,[8] and the prosecution of the daughter of a fourth.[9]  The Defendants argue that those Plaintiffs who allege that they received only "demands for compliance" do not have a "ripe" claim for selective prosecution – they have not been selected for prosecution, let alone selectively prosecuted. The County Defendants also argue that Esquivez does not have standing to sue on behalf of his daughter.

Plaintiffs block-quote two cases (*Diversified Numismatics, Inc. v. City of Orlando*, 949 F.2d 382, 388-89 (11th Cir. 1991); *J&B Social Club, No. 1, Inc. v. City of Mobile*, 920 F. Supp. 1241 (S.D. Ala. 1996)) and conclude that "at least 4" Plaintiffs have been singled out for prosecution, and therefore, this is not a pre-enforcement challenge.  Based upon the quotations, one possible argument that the Plaintiffs could make is that they have been harmed by "threatened enforcement" because they fear prosecution (*Diversified*) and since the County has enforced the statute against others (*J&B Social Club*), this is not a pre-enforcement challenge.  However, based upon Plaintiffs' conclusion that this is not a pre-enforcement challenge, they appear to argue instead that *Diversified*, which the County Defendants cite for the proposition that Plaintiffs cannot bring a lawsuit for selective prosecution if they are not being prosecuted, is distinguishable because based on *J&B Social Clubs*, the County has enforced the Ordinance against someone.

As County Defendants note, the cases cited involved pre-enforcement challenges to the constitutionality of a statute, and not pre-prosecution claims of selective prosecution.  Here, the Plaintiffs allege selective prosecution, which necessitates that they have been prosecuted; standing to challenge the constitutionality of a statute[10] is irrelevant.

---

[7] Plaintiffs Jesus Cortez, Enrique Gonzalez, Alfredo Esquivez, Luis Perez, Abelino Espinoza, Manuel Duenas, Eduardo Lascano, Ramon Perez, Jose Garcia, Socorro Zendejas, and Pablo Duenas.

[8] Plaintiffs Luis Silva Perez, Manuel Duenas, Jose Guadalupe Garcia.

[9] Plaintiff Alfredo Esquivez.

[10] Plaintiffs were provided one last opportunity to plead a cause of action for selective prosecution; they previously attempted to challenge the constitutionality of the Ordinance but failed to allege facts to support such a cause of action.  Their complaint does not attempt to challenge the constitutionality of the Ordinance and it would have been improper had they attempted to do so, given the Court's explicit instructions.

1   Based on the foregoing analysis, the Court concludes that the eight Plaintiffs who do not

2   allege that they have been prosecuted fail to state a claim for selective prosecution.

3   **C.   *MONELL* LIABILITY – WHETHER ALAMEDA COUNTY CAN BE HELD LIABLE UNDER SECTION 1983**

4   Under *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690-94 (1978), local governing bodies,

5   such as Alameda County, may be sued under Section 1983 only when the unconstitutional act

6   implements an official policy or custom.  The County argues that Plaintiffs do not allege any facts

7   that suggest Plaintiffs were subject to selective prosecution based upon a County policy or custom.

8   Plaintiffs do not address this issue in their brief.  After a review of the SAC, it is clear that Plaintiffs

9   do not allege that their civil rights were violated as a result of any policy or custom.

10   Based on the foregoing analysis, the Court **GRANTS** the Motion to Dismiss the claim against

11   the County on this basis as well.

12   **D.   UNDER COLOR OF STATE LAW**

13   The second element for a Section 1983 cause of action is that the defendants where acting

14   under color of state law.  A person acts "under color of law" when the person acts or purports to act

15   in the performance of official duties under any state, county, or municipal law, ordinance, or

16   regulation.

17   The issue here is whether the Homeowners' Association Defendants were acting under color

18   of state law, as required to state a Section 1983 claim.[11]  The Homeowners' Association Defendants

19   argue that they did not act "under color of state law" because all of the acts that deprived Plaintiffs of

20   constitutional rights were performed by the County Defendants.  Plaintiffs counter that private parties

21   can act under color of state law and argue that Plaintiffs have met their pleading burden because

22   "'[D]etailed factual allegations' are **not** required."  Pls.' Opp'n to Homeowners 8-9 (quoting

23   *Twombly*, 550 U.S. at 555) (alteration and emphasis in brief).

24   Generally private parties do not act under color of state law.  *See Price v. Hawaii*, 939 F.2d

25   702, 707-08 (9th Cir. 1991); *see also Simmons v. Sacramento County Superior Court*, 318 F.3d 1156,

26   1161 (9th Cir. 2003) (explaining that a lawyer in private practice does not act under color of state

27

28   [11] No dispute exists that Sheriff Ahern and Stavert acted under color of state law when they performed their duties as police officers and they do not argue the contrary.

law).  "Action taken by private individuals may be under color of state law where there is significant state involvement in the action."  *Johnson v. Knowles*, 113 F.3d 1114, 1118 (9th Cir. 1997) (internal quotations omitted).  "The Supreme Court has articulated four distinct tests for determining when the actions of a private individual amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test."  *Id*.  Plaintiffs do not specify which of these four tests they believe applies, and instead argue theoretically that private actors *may* act under color of state law.  Pls.' Opp'n to Homeowners 8 ("the Homeowners' Association Defendants as a private party [*sic*] may be found to have acted under color of state law.").  Based upon the cases cited by Plaintiffs, it appears they rely on the joint action test.[12]

Complaining to the police invokes the aid of state officials, but it cannot be said that the actions of the Homeowners Association Defendants are fairly attributable to the state.[13]  Joint participation requires something more than "[a] single request for the police to perform their peace-keeping functions."  *Howerton v. Gabica*, 708 F.2d 380, 385 (9th Cir. 1983).

However, where a private party conspires with state officials to deprive others of constitutional rights, the private party is acting under color of state law.  *See Tower v. Glover*, 467 U.S. 914, 920 (1984); *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980); *Crowe v. County of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010).  To state a cause of action for a conspiracy between private parties and the government under Section 1983, Plaintiffs must allege "an agreement or 'meeting of the minds' to violate constitutional rights."  *Fonda v. Gray*, 707 F.2d 435, 438 (9th Cir. 1983) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)).  "[E]ach must at least share the common

---

[12] Without any analysis or argument, Plaintiffs quote from two cases that involved joint action.  They provide a block-quote from *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980) (private parties are considered state actors when they are "jointly engaged with state officials in the challenged action") (private parties that bribed judge to issue injunction acted under color of state law because they were "willful participant[s] in joint action with the State or its agents"), and a quote from *Tulsa Prof. Collection Servs. v. Pope*, 485 U.S. 478, 486 (1988) ("State action may be found when 'private parties make use of state procedures with the overt, significant assistance of state officials'") (probate proceedings).

[13] The consequence of acting under color of state law is not simply that a private citizen can be held liable for violating another citizen's constitutional rights, but that the State can be held liable for the acts of a private citizen.  *See NCAA v. Tarkanian*, 488 U.S. 179, 191 (1988) ("'Careful adherence to the state action requirement preserves an area of individual freedom by limiting the reach of federal law' and avoids the imposition of responsibility on a State for conduct it could not control") (quoting *Lugar*, *supra*, 457 U.S. at 936-37).

United States District Court
Northern District of California

objective of the conspiracy." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir. 1989) (*en banc*) (citations and internal quotations omitted); *see also Mendocino Envt'l Ctr. v. Mendocino County*, 192 F.3d 1283, 1301-02 (9th Cir. 1999); *Gilbrook v. City of Westminster*, 177 F.3d 839, 856-57 (9th Cir. 1999); *Taylor v. List*, 880 F.2d 1040, 1048 (9th Cir. 1989). Sweeping, conclusory allegations are insufficient to state a claim of conspiracy; rather, Plaintiffs must set forth each Defendant's causal role in the alleged constitutional deprivation. *See Simmons*, *supra*, 318 F.3d at 1161; *Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 783-84 (9th Cir. 2001).

Here, Plaintiffs allege the legal conclusion that the parties conspired with discriminatory animus. The facts alleged are that the Homeowners' Association Defendants frequently complained to the County Defendants that the Plaintiffs were violating the Ordinance, and at the Homeowners' Association Defendants' "urging," the County Defendants cited and prosecuted Plaintiffs for possibly non-existent violations of the Ordinances. SAC ¶¶ 10, 18, 28, 30. Neither making complaints to the County Defendants nor "urging" the County Defendants plausibly suggests "an agreement or 'meeting of the minds'" to form a conspiracy; simply alleging that every Defendant acted with discriminatory intent does not establish a meeting of the minds on a common objective. It also is not clear what that common objective might be: to discriminate against Plaintiffs because they are Hispanic (*id.* ¶¶ 8, 9, 11, 27, 30); to force and/or eliminate Plaintiffs from their homes (*id.* ¶ 18); or to deprive Plaintiffs of property rights (*id.* ¶ 19).[14]

Section 1983 excludes from its reach purely private conduct, no matter how discriminatory or wrongful. Plaintiffs' remedy against the Homeowners' Association Defendants, if any, lies in private suits (in state court) for damages. However, Plaintiffs have failed to state a Section 1983 cause of action against the Homeowners' Association Defendants.

Based on the foregoing analysis, the Court **GRANTS** the Motion to Dismiss the lawsuit against the Homeowners' Association Defendants because they did not act under color of law.

---

[14] In their opposition to the motion, the Plaintiffs argue that the conspiracy was "to force and eliminate Plaintiffs from residence in the Fairview area of the Hayward Hills." Pls' Opp'n to Homeowners 6.

United States District Court
Northern District of California

**IV.      CONCLUSION**

As set forth above, Defendants' Motions to Dismiss are **GRANTED WITHOUT LEAVE TO AMEND**.

This action as set forth in the Second Amended Complaint, Dkt. No. 43, is **DISMISSED WITH PREJUDICE**.

This Order Terminates Docket Numbers 45 & 46.

**IT IS SO ORDERED.**

**Date:July 20, 2012**

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**